**Reginald Wayne STARKS, Appellant,**

v.

**The STATE of Texas.**

**No. 2–88–068–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 7, 1989.

Rehearing Denied Oct. 5, 1989.

Discretionary Review Refused
Nov. 29, 1989.

Alley & Alley and Richard Alley, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and David L. Richards, Asst., Fort Worth, for the State.

Before HILL, FARRIS and KELTNER, JJ.

## OPINION

HILL, Justice.

Reginald Wayne Starks appeals his conviction by a jury of the offense of capital murder. Since the jury gave a negative answer when asked if Starks would constitute a continuing threat to society, the trial court, as required by law, sentenced Starks to life imprisonment in the Texas Department of Corrections. Starks contends in fourteen points of error that the trial court erred: (1) in overruling his challenges to the array; (2) in overruling his application for a writ of attachment to attach absent jurors; (3) in overruling his challenges for cause of various members of the venire; (4) in sustaining a challenge for cause brought by the State; (5) in not permitting him to offer into evidence an exculpatory statement taken by the police after his arrest; and (6) in failing to instruct the jury on the law of involuntary manslaughter.

Starks shot and killed Denise Allen in the course of a robbery.

We affirm, because we find that the trial court did not err: (1) in overruling Starks' challenge to the array, because the evidence presented in support of Starks' challenge would not support a finding that the officer summoning the jury had willfully summoned jurors with a view to securing a conviction; (2) in overruling Starks' application for a writ of attachment for absent jurors, because Starks failed to show that due to the court's failure to grant the writ that he was required to take a juror that was objectionable within the meaning of the term in this context; (3) in overruling Starks' challenges for cause and in sustaining the State's challenge for cause of prospective jurors, because the rulings of the court were within its discretion; (4) in not permitting Starks to offer into evidence an exculpatory statement taken from him by the police after his arrest, because when an accused does not take the stand, self-serving statements are not admissible where they are merely contradictory to some act or declaration first offered by the prosecution; and (5) in not instructing the jury on the law of involuntary manslaughter, because there was no evidence that if Starks were guilty at all he was only guilty of the offense of involuntary manslaughter.

Starks urges in point of error number one that the trial court erred in overruling his challenges to the array.

■ Starks' jury was selected from jurors summoned to appear in the afternoon. On the morning of the day the jurors were to appear, certain unknown persons, who were not government workers, handed out certain pamphlets which informed the potential jury members of the doctrine of nullification, the right of a jury to acquit a criminal defendant in disregard of the court's instructions. Although there is no indication that these pamphlets were handed out to those appearing for service in the afternoon, there were apparently some left in the jury room and read by the potential jurors.

The record also reflects that a number of the prospective jurors were allowed by the appropriate judge to transfer their service to a later time without there being any notation made as to the reason for the transfer.

"Each party may challenge the array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or acquittal...." TEX.CODE CRIM. PROC.ANN. art. 35.07 (Vernon 1989). Since the evidence presented in support of the grounds raised by Starks in his motion to challenge the array would not support a finding that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction, we overrule point of error number one.

■ Starks contends in point of error number two that the trial court erred in overruling his application for a writ of attachment to attach those who did not respond to the jury summons. In order for the denial of an attachment to constitute reversible error, the defendant must establish that an injury occurred due to the trial court's failure to grant his request for the attachments. *Jackson v. State*, 745 S.W.2d 4, 17 (Tex.Crim.App.1988).

Prior to the beginning of jury selection, Starks moved to attach thirty prospective jurors who were called for duty, who did not show up, and who had not received any excuse from jury service. The trial court overruled the motion. Starks insists that he was injured because he exhausted his peremptory strikes and was forced to take an objectionable juror, a Ms. Bryson.

■ The Texas Court of Criminal Appeals has held that in determining whether a defendant has been harmed by the trial court's failure to issue attachments for absent jurors, the term "objectionable juror" means "one against whom such cause for challenge exists as would likely affect his competency or his impartiality in the trial." *Stephenson v. State*, 494 S.W.2d 900, 906 (Tex.Crim.App.1973). We must look to see if some cause, such as the formation of opinion or prejudice, might be a ground of challenge that would tend to show that the juror was not absolutely fair and impartial.

*Prewitt v. State,* 145 Tex.Crim. 202, 167 S.W.2d 194, 197 (1943). We have examined the voir dire of Ms. Bryson and find that it shows that she was not an objectionable juror within the meaning of the term as used in this context.

■ In his brief, Starks contends that Ms. Bryson was objectionable because she stated that it would be difficult for her to consider probation, and that she would have problems in not considering the applicability of parole to any sentence. We understand Ms. Bryson's testimony to be that it would be difficult to consider probation in a case like this, but that she would give it earnest consideration. With respect to parole, she indicated that she knew about it, but that she could follow the court's instruction not to consider parole. We do not agree with the statement in Starks' brief that Ms. Bryson stated that she would have problems not considering the applicability of parole to any sentence. Her testimony was exactly to the contrary. We overrule point of error number two.

■ Starks asserts in point of error number thirteen that the trial court erred in not permitting him to offer an exculpatory statement that he made to the police. In a written statement which he gave to the police after he was arrested, Starks stated:

> I walked up to the passenger's side when they got stopped and I used the barrel of the gun and was tapping on the glass to try to get them to open the door. Then I busted the glass and they started driving and they bumped into the car and the gun just went off. The door hit the gun as they were pulling off and the gun accidently [sic] went off and I just stopped because I didn't mean to shoot anybody.

We find that the statement was not admissible, for the reasons stated in the case of *Singletary v. State,* 509 S.W.2d 572, 576–77 (Tex.Crim.App.1974). At trial, counsel for Starks argued that the statement was admissible as being necessary to explain or contradict acts or declarations first offered by the State. Starks did not take the stand. It has been held that when the accused does not take the stand, self-serving statements are not admissible where they are merely contradictory to some act or declaration first proffered by the prosecution. *Reado v. State,* 690 S.W.2d 15, 17 (Tex.App.—Beaumont 1984, pet. ref'd). We overrule point of error thirteen.

Starks argues in point of error number fourteen that the trial court erred by not instructing the jury on the law of involuntary manslaughter. He contends that the testimony of three witnesses, Moses Meacham, Kerwin Branch, and Dan Brown relate that the shooting was a shock to Starks, accidental, and not as the result of an intentional act of Starks.

Kevin Branch indicated that in the alley after the gun went off, Starks looked almost shocked. In his brief, Starks states that Dan Brown testified that the gun "just went off," and that Brown related that he believed that the gun "went off" accidentally. Brown did testify that the gun "just went off," but he did not testify, as Starks' brief would indicate, that he believed that the gun "went off" accidentally. Instead, he testified that in his opinion, the firing of the gun could have been an intentional act, or it could have been an accidental act, that he just did not know. Starks does not refer us to any testimony of Moses Meacham relating to his claim of an accidental shooting.

■ We must determine if there is evidence from any source that raises the issue of involuntary manslaughter and whether there is testimony that if Starks is guilty at all, he is only guilty of the offense of involuntary manslaughter. *See Hunter v. State,* 647 S.W.2d 657, 658 (Tex.Crim.App. 1983).

■ We have examined the testimony to which Starks refers us and find that none of it is inconsistent with Starks' guilt of the offense of capital murder, and that it therefore does not show that if Starks is guilty at all he is only guilty of the offense of involuntary manslaughter. We overrule point of error number fourteen.

In points of error numbers three through twelve, Starks contends that the trial court erred: (1) in failing to grant numerous challenges for cause of certain members of the venire; (2) in granting the State's challenge for cause of one potential juror; and (3) in refusing to grant his request for an additional peremptory challenge to remove an objectionable juror from the petit jury panel. Starks has presented us with those portions of the voir dire which support his case and omitted those portions that support the trial court's decision. We have carefully examined the voir dire of the individuals of which Starks complains and find that his contentions are without merit because the determinations of the trial court were within its discretion. We overrule points of error numbers three through twelve.

The judgment is affirmed.

